CAMP et al. v. GRESS.

(Circuit Court of Appeals, Fourth Circuit. July 20, 1917.)

No. 1527.

1. COURTS ⊕⟶308—JURISDICTION—PROPER DISTRICT—DIVERSITY OF CITIZENSHIP.

Under Jud. Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. 1916, § 1032]) § 50, providing that, when there are several defendants and one or more are neither inhabitants of nor found within the district, the court may entertain jurisdiction and proceed to the trial between the parties who are properly before it, and section 51 (Comp. St. 1916, § 1033), providing that a civil suit between citizens of different states shall be brought only in the district of the residence of either the plaintiff or the defendant, where jurisdiction depends on diversity of citizenship alone, and there is only one defendant, suit against him must be brought in either the district of his residence or that of plaintiff, but where there are several defendants, the court has jurisdiction of all if one or more are residents of the district and the others are found there.

2. APPEAL AND ERROR ⊕⟶173(1)—MATTERS NOT CONTROVERTED BELOW—MOTION.

Where the averment of fact in a motion which the court granted was not controverted below, it cannot be drawn in question here.

3. **COURTS ⬤⟐308—JURISDICTION—JOINT DEFENDANTS NOT RESIDING IN DISTRICT.**

Even if a plea in abatement was good as to one of defendants, joint makers of the contract, it could not avail the others in view of Jud. Code, § 50, enabling a plaintiff to sue one or more joint makers in the district of their residence when the others could not be brought in because of their residence in another district.

4. **LOGS AND LOGGING ⬤⟐3(15)—FAILURE TO CONVEY TIMBER TO CORPORATION —ACTION.**

Plaintiff, owning all the stock in a sawmill plant of a corporation, entered into a contract with defendants providing that a charter should be obtained for a company. Defendants were to convey timber to the company, and plaintiff the sawmill plant, and the stock of the corporation was to be issued in the proportion of thirteen-eighteenths to defendants and five-eighteenths to plaintiff. *Held*, that plaintiff alone could bring an action for defendants' breach; the contract being with him, and not with the company.

5. **LOGS AND LOGGING ⬤⟐3(15)—BREACH OF CONTRACT—MEASURE OF DAMAGES.**

Plaintiff owned in connection with the mill plant a large body of timber which he intended to saw. After the contract with defendants he sold this timber on the strength of the contract. Defendants knew of the sale before they breached the contract. *Held*, that plaintiff was entitled to five-eighteenths of the net increase in the value of the timber which defendants retained and the whole of the loss in the value of his stock in the old corporation, which plaintiff alone had to bear.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action by Morgan V. Gress against P. D. Camp and others. Judgment for plaintiff and defendants bring error. Affirmed.

T. D. Savage and Thomas H. Willcox, both of Norfolk, Va. (Willcox, Cooke & Willcox, of Norfolk, Va., on the brief), for plaintiffs in error.

William M. Toomer, of Jacksonville, Fla., and D. Lawrence Groner, of Norfolk, Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. In this action for breach of contract the plaintiff recovered judgment for $31,361.10. The contract dated August 18, 1913, between M. V. Gress, on the one part, and P. D. Camp, P. R. Camp, and John M. Camp jointly, on the other, provided that a charter should be obtained for a joint-stock company to be organized by December 1, 1913, to be called the Levy County Lumber Company. The Camps were to convey to the corporation a large body of timber in Levy County, Fla., at a valuation of $325,000, and Gress, a sawmill plant in the city of Jacksonville, at a valuation of $125,000. The stock of the corporation was to be issued in the proportion of thirteen-eighteenths to the Camps and five-eighteenths to Gress. On December 31, 1914, the contract was breached by the formal refusal of the Camps to carry it out. The grounds of the refusal, as expressed by P. D. Camp, were the failure of the health of his brothers and the fall in the price of lumber, making certain in his opinion the operation of the projected business at a loss.

The damages claimed at the trial were the losses by Gress by reason

of: (1) A large increase in the value of the timber between the date of the contract and the breach; and (2) a large decrease in the value of the mill by reason of the lack of timber to saw. The claims were for a much larger amount than that found by the jury.

[1] We consider first the point that the District Court should have sustained the pleas in abatement challenging the jurisdiction of the court. Gress is a resident of Florida. P. D. Camp and P. R. Camp are residents of the Eastern district of Virginia. John M. Camp is a resident of the Eastern district of North Carolina, and accepted service of the summons in the Eastern district of Virginia. His contention is that he can be sued only in the district of his own residence or in the district of the residence of the plaintiff. The other defendants contend that, since the obligation was joint, and not several, the action cannot be maintained against them without making John M. Camp a party, that he cannot be sued in the Eastern district of Virginia, and that therefore the action should be dismissed as to all. These jurisdictional questions depend on the construction of sections 50 and 51 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. 1916, §§ 1032, 1033]), taken in connection.

Section 50 provides:

"When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and nonjoinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit."

Section 51 provides, among other things:

" * * * No civil suit shall be brought in any District Court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

The act of 1875 (Act March 3, 1875, c. 137, 18 Stat. 470) provided that even a single defendant might be sued either in the district of his residence or the district where he was found. Section 51 of the Judicial Code, taking the place of the corresponding section of the act of 1875, leaves out the provision that a defendant may be sued in the district in which he is found. Therefore, where there is only one defendant, and the jurisdiction depends, as in this case, on diversity of citizenship alone, the suit must be brought in either the district of the residence of the defendant or of the plaintiff. Although the Judicial Code received great consideration, the act of 1839 (Act Feb. 28, 1839, c. 36, § 1, 5 Stat. 321 [Comp. St. 1916, § 1032]) was re-enacted as section 50, and by it the provision is made as to an action against two or more defendants, one or more of them being neither inhabitants of nor found within the district in which the suit is brought and not voluntarily appearing, that the court may entertain jurisdiction without prejudice to the rights of the party not regularly served nor volun-

tarily appearing. The words "found in the district," left out of one section and retained in the other, must have significance. If they have, the sections, construed together, must mean that for purposes of jurisdiction a single defendant must reside in the district in which the suit is brought, but where there are several defendants the court has jurisdiction of all if one or more are residents of the district and the others are found there. We find no controlling authority on the subject, but this construction, required as it seems to us by the letter of the statutes, is the more readily adopted because it facilitates the administration of justice, and obviates in a degree the necessity of a multiplicity of actions in different districts on the same cause of action.

[2] There is no foundation for the argument that the defendant John M. Camp was not "found" in the Eastern district of Virginia. The pleas to the jurisdiction alleged only that he was not a resident of that district. The ground of the motion to strike out the pleas to the jurisdiction was that, although not a resident, he was found in the district. This averment of fact in the motion on which the court granted it was not controverted in the court below, and cannot be drawn in question here. The pleas to the jurisdiction were properly overruled.

[3] Even if the plea in abatement were good as to John M. Camp, it could not avail the other defendants. One of the evident purposes of the enactment of the statute of 1839 (section 50 of the Judicial Code) was to enable a plaintiff to sue one or more joint makers of a contract in the district of their residence when other joint makers could not be brought into the action because of their residence in another district. Clearwater v. Meredith, 21 How. 489, 16 L. Ed. 201; Barney v. Baltimore, 6 Wall. 280, 18 L. Ed. 825. If the court had had no jurisdiction of John M. Camp, the judgment as to him would be a nullity not affecting the judgment rendered against the other defendants. Gray v. Stuart, 33 Grat. (Va.) 351.

[4] On the merits, the first position taken is that Gress, the plaintiff, could not recover damages for depreciation in the value of the sawmill plant because the title to the plant was in the Morgan Lumber Company, and was never acquired by the plaintiff, although he was the owner of all the stock of the corporation. It is true, as has been decided in numberless cases, that an action for damages for breach of a contract made by a corporation must be brought in the name of the corporation itself, and cannot be maintained by the stockholders or even by one stockholder owning all the stock. But this contract was not made either nominally or actually by the Morgan Lumber Company or for its benefit. This being so, no action could be brought by the corporation for breach of the contract. The defendants knew that Gress was not the legal owner of the sawmill plant; for the ownership of the Morgan Lumber Company was recited in the contract. Gress undertook to procure the conveyance of the property direct to the Levy County Lumber Company. The defendants accepted this obligation on his part; and it is admitted that he was ready, willing, and able to carry out his agreement at all times. He was prevented from having the conveyance made solely by the express refusal of the defendants to allow him to do so. The promise of the

defendants was to Gress, and he alone could allege against the defendants damages for its breach.

Looking through the substance of the matter, what was the practical result to Gress of the defendants' breach? The defendants after default sold the timber for a net price much greater than $325,000. Gress was obviously entitled to receive his share of this net increase in price.

[5] The depreciation in the value of the mill plant came about in this way: Gress owned in connection with his mill plant a large body of timber which he intended to saw. After contracting with the defendants, he sold this timber on the faith of the contract. The defendants knew of his sale before they breached the contract. They cannot escape liability for the loss to Gress growing out of a condition which they knew would result from their default. Had the new corporation been formed, the plaintiff would have put in the sawmill plant at a valuation of $125,000, for which he would have received the equivalent in stock of the new corporation. The necessary result to Gress of the breach therefore was the loss of the difference between the value of the stock which would have been issued to him in the new corporation and the value of the stock in the Morgan Lumber Company as diminished by reason of the breach of contract by the defendants. This difference in value of stock was made by two facts: (1) The increase in the value of the timber retained by the defendants; and (2) the decrease in the value of the plant to be put in by Gress. The stock which would have been issued to him in the new corporation was worth five-eighteenths of the value of the timber to be contributed by the defendants and of the sawmill plant which the plaintiff was to contribute. There had been an increment in the value of the timber at the date of the breach, and the plaintiff was entitled to five-eighteenths of that increment, because, if the contract had been carried out, that fraction of the increment would have been added to the value of his stock.

The plaintiff's stock in the new corporation would have represented also five-eighteenths of the value of the mill plant, and had it been taken, gain or loss in its value would have been shared by the plaintiff and the defendants in the proportions of five-eighteenths and thirteen-eighteenths. But when the defendants breached their contract and brought about the diminution in the value of the mill property, they left the plaintiff to bear this entire loss in the diminished value of his stock in the Morgan Lumber Company. The defendants being solely responsible for this loss, all of which fell on the plaintiff, he is entitled to recover the whole from them. The District Court therefore correctly charged that the plaintiff was entitled to recover five-eighteenths of the net increase in the value of the timber which the defendants retained and the whole of the loss in the value of the plant which the plaintiff alone had to bear and which would not have occurred but for defendants' default.

Stating the matter differently and more succinctly, there was no loss on the timber by reason of the breach of the contract, but the defendants, having received the entire increase in its value, must account to the plaintiff for five-eighteenths, his share; the default of the defend-

ants brought loss in the value of the plant borne by the plaintiff alone, and for this entire loss the plaintiff must be compensated by the defendants who caused it.

No hard and fast rule as to the measure of damages or the method of ascertaining them for breach of contract can be laid down. Every case depends on its own facts. We have endeavored to show that the District Court adopted in this case the only measure and method by which the direct and proximate loss falling on the plaintiff from the defendants' breach could be ascertained; and the verdict of the jury under the instructions has abundant support in the evidence. It results from the views we have stated that none of the assignments of error are well founded.

Affirmed.